United States District Court
Southern District of Texas

**ENTERED**

March 15, 2023

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| JOE ORTEGA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-CV-00096 |
| | § | |
| KILOLO KIJAKAZI, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Joe Ortega ("Plaintiff") seeks judicial review of a final adverse decision by the Acting

Commissioner (the "Commissioner") of the Social Security Administration (the "SSA") pursuant

to 42 U.S.C. § 405(g).  Plaintiff's main allegation is that whether the Administrative Law Judge

("ALJ") improperly substituted his own opinion about Plaintiff's residual functional capacity

(RFC).  (Doc. No. 14, pp. 2–3.)  Plaintiff requests that the Court vacate the ALJ's decision and

remand this matter to develop additional medical opinion evidence.[1]  *Id.* at 12.

This social security appeal has been referred to the undersigned for issuance of a

memorandum and recommendation.  On November 28, 2022, Plaintiff filed a brief in support of

his claim.  (Doc. No. 14.)  On December 22, 2022, the Commissioner filed a response.  (Doc.

No. 16.)  On January 5, 2023, Plaintiff filed a reply.  (Doc. No. 17.)  After review of the parties'

---

[1]  Plaintiff suggests other possible outcome options, but the question to be decided is whether the Commissioner's decision should be upheld, not to determine if Plaintiff is disabled.  *See infra* Section B: Standard of review, p. 2.

briefing, the record, and relevant law, and for the reasons discussed below, the undersigned recommends the decision of the Commissioner be affirmed and that this case be dismissed.

### A. *Jurisdiction.*

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g).  This case has been referred to the undersigned pursuant to 28 U.S.C. § 636.

### B. *Standard of review.*

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole; and (2) whether the decision applied the proper legal standard. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)).  Substantial evidence is "more than a mere scintilla and less than a preponderance."  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citations and internal quotations omitted).  This means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Further, in applying this standard, "'[t]he court does not reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.'"  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).  Rather, the court must scrutinize the record to determine whether substantial evidence is present.  *Carey*, 230 F.3d at 135 ("Conflicts in the evidence are for the Commissioner to resolve.").

"If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed." *Heather H. v. Kijakazi*, No. 4:20-CV-736, 2021 WL 4138406, at *2 (S.D. Tex. Sept. 10, 2021) (Palermo, M.J.) (citations omitted). The reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

To qualify for disability insurance benefits or supplemental security income, "a claimant must suffer from a disability." *Copeland*, 771 F.3d at 923. A disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled for the purposes of disability insurance and supplemental security income, and thus entitled to disability benefits, the ALJ employs a five-step approach, which considers whether:

> (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work.

*Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (citing *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018)); 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof lies with the claimant on the first four steps, and at the fifth step, the burden shifts to the Commissioner, who must show that, in light of claimant's residual functional capacity ("RFC"), claimant can perform other substantial work in the national economy. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). The ALJ need not continue the analysis should, at any step, the Commissioner finds that the claimant is or is not disabled. *See Copeland*, 771 F.3d at 923.

Residual functional capacity, which is determined between the third and fourth steps, is the most a claimant can do despite their limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); *Perez*, 415 F.3d at 461–62.  In determining a claimant's RFC, the ALJ must consider all relevant medical and other evidence, including statements by the claimant and their family members regarding the limitations that result from the claimant's symptoms.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The plaintiff is responsible for providing the evidence used to make a finding about RFC.  *Id.*  "[T]he determination of residual functional capacity is the sole responsibility of the ALJ."  *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012); *Ripley v. Chater*, 67 F.3d 552, 447 (5th Cir. 1995).  The ALJ must articulate how persuasive he or she finds each of the opinions in the record and explain his or her conclusions regarding the supportability and consistency factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

When determining whether a claimant can perform other relevant work at the fifth step, an ALJ may rely upon a vocational expert's testimony, provided that the record reflects an adequate basis for doing so.  *Carey*, 230 F.3d at 145–47.  The issue at step five is whether the ALJ's hypothetical question to the vocational expert reasonably incorporates the disabilities recognized by the ALJ.  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).  "A vocational expert is called to testify because of his familiarity with job requirements and working conditions" and may rely on his expertise to arrive at the conclusions he gives to the ALJ.  *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

### C. *Procedural background.*

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on November 22, 2019.  (Doc. No. 11-3, p. 15.)  Plaintiff's claims

were initially denied on May 29, 2020 and again denied upon reconsideration on September 22,

2020.  (Doc. No. 11-5, pp. 4, 21-22.)  Subsequently, Plaintiff requested a hearing before an ALJ;

that hearing was held via telephone on August 4, 2021.  (Doc. No. 11-3, p. 38.)

Plaintiff, who was represented by counsel, testified via telephone[2] and under oath

regarding his disability.  (Doc. No. 11-3, p. 40.)  Judith Harper, a vocational expert, also testified

regarding Plaintiff's ability to complete hypothetical tasks and perform related employment

duties.  *Id.* at 59–67.

Based on vocational expert testimony, the ALJ concluded that Plaintiff could not perform

his past relevant work.  (Doc. No. 11-3, pp. 24-25.)  The ALJ also noted, however, that Plaintiff

was 39 years old on the alleged disability onset date, which is defined as a younger individual,

that Plaintiff has at least a high school education, and that "[t]ransferability of job skills is not

material to the determination of disability because using the Medical-Vocational Rules as a

framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has

transferable job skills."  *Id*. at 25.  Based on those findings, along with Plaintiff's residual

functional capacity, the ALJ found that there are jobs that exist in significant numbers in the

national economy that Plaintiff can perform.  *Id*.  And, on August 27, 2021, the ALJ found

Plaintiff "not disabled" pursuant to §§ 216(i) and 223(d) of the SSA and § 1614(a)(3)(A) of the

Social Security Act, and therefore not entitled to disability benefits and supplemental security

income.  *Id*. at 26.

The Commissioner denied Plaintiff's applications initially and upon reconsideration.

(Doc. No. 11-5, pp. 4, 21-22.)  After reviewing the evidence and conducting a hearing, the ALJ

---

[2]  The transcript states that Plaintiff appeared at the hearing in person, but the ALJ said that the hearing was being
conducted over the phone.  (Doc. No. 11-3, p. 40.)

issued an unfavorable decision on August 27, 2021. (Doc. No. 11-3, pp. 15-26, 38-70.) Plaintiff

filed a request for review of the ALJ's decision, and the Appeals Council denied this request on

March 7, 2022. (Doc. No. 11-3, pp. 2-5.)

On May 5, 2022, Plaintiff timely filed this action for judicial review of the

Commissioner's final decision. (Doc. No. 1.) Plaintiff prays that the Court modify the findings

of the ALJ and find Plaintiff disabled and entitled to a period of disability and disability

insurance benefits under 42 U.S.C. § 205(g). *Id*. at 3.

### D. *August 4, 2021 ALJ Hearing.*

On August 4, 2021, Plaintiff attended a telephone hearing before the ALJ. (Doc. No. 11-

3, p. 40.) Plaintiff was represented by counsel, who also appeared by telephone. *Id*. at 41.

Plaintiff alleged that he has been unable to work since December 13, 2018, because of his

disability. *Id*. at 44. At the time of this alleged disability onset date, Plaintiff was 39 years old.

*Id*. at 25. Plaintiff testified that he obtained a GED. *Id*. at 54. The basis for Plaintiff's disability

claim is back spasms, general back pain, bipolar disorder, the general need for medication, and

asthma. *Id*. at 56.

After this hearing, the ALJ considered whether Plaintiff was disabled under §§ 216(i),

223(d), and 1614(a)(3)(A) of the Social Security Act. (Doc. No. 11-3, p. 15.) In working

through the five-step sequential process, the ALJ made the following determinations:

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2021. (Doc. No. 11-3, p. 17.)

(2) Plaintiff had not engaged in substantial gainful activity since December 13, 2018 pursuant to 20 C.F.R. §§ 404.1571 and 416.971. *Id.* at 15-17.

(3) Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, asthma, obesity, mild recurrent depression/bipolar disorder, and

anxiety disorder pursuant to 20 C.F.R. §§ 404.1520(c) and 416.920(c)).  (Doc. No. 11-3, p. 18.)

(4) Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments pursuant to 20 C.F.R. 404, Subpart P, Appendix 1 and 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.  *Id.* at 18-20.

(5)  Plaintiff had the residual functional capacity (RFC) to perform light work pursuant to 20 C.F.R. §§ 404.1567(b) and 416.967(b)[3]—limited to no climbing ladders, ropes and scaffolds, performing only occasional[4] stooping, kneeling, and crawling, no more than occasional exposure to pulmonary irritants, occasional interactions with supervisors, coworkers and the general public, he can understand, remember and carry out simple job instructions and work-related tasks; and no more than occasional changes in work setting. *Id*. at 24.

(6) Plaintiff was unable to perform any past relevant work pursuant to 20 C.F.R. §§ 404.1565 and 416.965.  (Doc. No. 11-3, pp. 24-25.)

(7) Plaintiff was born in 1979 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date pursuant to 20 C.F.R. §§ 404.1563 and 416.963. *Id*. at 25.

(8) Plaintiff has at least a high school education pursuant to 20 C.F.R. §§ 404.1564 and 416.964. *Id*.

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff

---

[3]  These regulations both state:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567 and 416.967.

[4]  "Occasionally" for purposes of Social Security disability determinations means from very little up to one-third of the time, depending on the particular job. *See* Social Security Ruling (SSR) 83-14, 1983 WL 31254, at *2 (S.S.A. Jan. 1, 1983).

was "not disabled," whether or not Plaintiff has transferable job skills.  *Id*. (citing SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10) Considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  *Id*. at 25-26 (citing 20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

Accordingly, the ALJ determined Plaintiff had not been under a disability, as defined by the Social Security Act, from December 13, 2018, through the date of the ALJ's decision on August 27, 2021.  (Doc. No. 11-3, p. 26.)

### E.  Discussion.

#### 1.  The ALJ did not improperly substitute his own medical judgment to determine Plaintiff's RFC.

Plaintiff alleges that the ALJ improperly substituted his own opinion regarding Plaintiff's residual functional capacity, without relying on specific medical or other evidence to support his conclusion.  *See* Doc. No. 17, p. 2.  Plaintiff acknowledges that the ALJ correctly determined that evidence presented at the August 4, 2021 hearing demonstrates the need for additional limitations to the RFC proposed by some state agency medical consultants; however, Plaintiff argues that the ALJ exceeded his qualification by determining that Plaintiff can perform light work with these additional limitations.  *Id.* at 4.  Plaintiff urges that, by rejecting the medical opinions of the state agency consultants and the primary care physician, Dr. Main, the ALJ had no remaining medical evidence on which to rely in making an RFC determination.  (Doc. No. 14, pp. 8–11.)

The Commissioner argues that the ALJ properly found the prior administrative findings of the state agency medical consultants, the state agency psychological consultants, and the medical source statement of Dr. Main unpersuasive, reviewed the record as a whole, and then

properly determined Plaintiff's RFC.  (Doc. No. 16, pp. 5-8.)  The Commissioner maintains that

the ALJ specified what parts of the medical opinions he found unpersuasive and adequately

followed the regulations in interpreting the evidence of the Plaintiff's testimony and the

remaining persuasive medical evidence.  *See id.*

Federal regulations and caselaw used to require an ALJ to give controlling weight to a

treating physician's opinion; however, this is no longer the case.  "For claims filed after March

27, 2017, an ALJ instead considers a list of factors in determining what weight, if any, to give a

medical opinion."  *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) (*comparing* 20 C.F.R.

§ 404.1527 (2016) *with* 20 C.F.R. § 404.1520c).  In other words, the ALJ is no longer required to

defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion or prior administrative medical finding.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Plaintiff initiated his case on November 22, 2019.  (Doc. No. 11-3, p. 15.)  Therefore, the new

rule applies.

Accordingly, the ALJ is to consider all medical opinions and prior administrative medical

findings using the same specific factors outlined in the rule, the most important of which are

supportability and consistency.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  Importantly,

"[a]n ALJ must articulate how [they] considered the supportability and consistency factors for a

medical opinion . . . in [their] determination."  *William T. v. Comm'r of Soc. Sec.*, No. 6:18-CV-

0055-BU, 2020 WL 6946517, at *3 (N.D. Tex. Nov. 25, 2020) (citing § 404.1520c(b)(2)).

As to supportability, "the more relevant the objective medical evidence and supporting

explanations presented by a medical source are to support his or her medical opinion(s) or prior

administrative medical finding(s), the more persuasive the medical opinions or prior

administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

Consistency means that the more consistent a medical opinion or prior administrative finding is,

the more persuasive the medical finding will be.  *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).  An

adequate explanation of supportability and consistency is one that "enables the court to

undertake a meaningful review of whether his finding with regard to the particular medical

opinion was supported by substantial evidence, and does not require the Court to merely

speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof."  *Luckett v.*

*Kijakazi*, 2021 WL 5545233, at *4 (quoting *Cooley v. Comm'r of Soc. Sec.*, No. 2:20-CV-46-

RPM, 2021 WL 4221620, at *6 (S.D. Miss. Sept. 15, 2021)).

> a.      ***The ALJ did not err in his evaluation of the state agency medical consultants'***
> ***medical opinions.***

The ALJ considered the medical opinions of the state agency medical consultants'

opinions.  (Doc. No. 11-3, p. 23.)  The ALJ noted the state agency physical consultants' opinions

found Plaintiff's asthma was a non-severe impairment and that Plaintiff had the RFC to perform

a full range of light work.  (Doc. No. 11-3, p. 23; Doc. No. 11-4, pp. 37, 40-41, 53, 56-57.)

Further, Shabnam Rehman, M.D. ("Dr. Rehman") found Plaintiff had no postural, manipulative,

or environmental limitations.  (Doc. No. 11-4, pp. 40, 56.)  Scott Spoor, M.D., reviewed and

affirmed Dr. Rehman's opinion.  *Id*. at 75-76.  After reviewing the record as a whole, the ALJ

found Plaintiff was more limited and included additional postural and environmental limitations

to account for Plaintiff's severe asthma, obesity, and degenerative disc disease of his lumbar

spine.  (Doc. No. 11-3, p. 23.)  Accordingly, the ALJ limited Plaintiff to occasional stooping,

kneeling, crouching, crawling, and climbing ramps and stairs and no climbing of ladders, ropes,

and scaffolds.  (Doc. No. 11-3, p. 20.)  The ALJ also found Plaintiff could have no more than

occasional exposure to pulmonary irritants.  (Doc. No. 11-3 at 21.)

Further, in regard to the state agency psychological consultants, the ALJ recognized that

Blaine Carr, Ph.D. ("Dr. Carr"), found that Plaintiff could understand, remember, and carry out

detailed but not complex instructions, make decisions, attend and concentrate for extended

periods, accept instructions, and respond appropriately to changes in a routine work setting.

(Doc. No. 11-3, p. 23; Doc. No. 11-4, pp. 42-43.)  Sylvia Chen, Ph.D., reviewed and affirmed

Dr. Carr's opinion.  (Doc. No. 11-4, pp. 77-78.)   The ALJ, however, found that Plaintiff was

more limited based on treatment notes showing Plaintiff had ongoing sleep problems,

forgetfulness and difficulty controlling his anger.  (Doc. No. 11-3, p. 23; Doc. No. 11-15, p. 49;

Doc. No. 11-20, p. 103; Doc. No. 11-22, p. 75.)  Accordingly, the ALJ included additional

mental limitations in his RFC finding, limiting Plaintiff to understanding, remembering, and

carrying out simple instructions and work-related tasks, no more than occasional changes in

work setting, and only occasional interaction with supervisors, coworkers, and the general

public.  (Doc. No. 11-3, pp. 20-21.)

Plaintiff does not contest any of the ALJ's findings regarding these additional limitations.

Further, the evidence does not establish that Plaintiff had any limitations lasting or expected to

last a duration of 12 months.  *See* 20 C.F.R. §§ 404.1509, 416.909 (duration requirement for an

impairment to be considered disabling).

In sum, the ALJ considered all medical opinions and prior administrative medical

findings, using the relevant factors.  Accordingly, the ALJ did not err in his evaluation of the

state agency medical consultants' opinions.

b.        *The ALJ did not err in his evaluation of the opinion by Dr. Main.*

Plaintiff argues that the "ALJ's rationale for rejecting the opinion of . . . Dr. Main[] is

suspect." (Doc. No. 14, p. 11.)  Plaintiff asserts that "recent diagnostic studies have found disc

herniations producing up to severe central spinal stenosis at L3-L4 and L4-L5, with narrowing

which most likely contacts the right L3 and the right L4 nerve root. *Id*. (citing Doc. No. 11-24,

p. 8); *see* Doc. No. 11-24, pp. 7-8 (report impression of Timothy Seipel, M.D.).  Plaintiff claims

that because hospital evaluations determined that Mr. Ortega has neuropathy, with diminished

sensation in his lower extremities, and because of the potential for severe central spinal stenosis,

that there was objective medical evidence to support Dr. Main's opinion—Dr. Main was not

solely relying upon Plaintiff's complaint, as the ALJ contended.  (Doc. No. 14, p. 11.)

The ALJ found the medical source statement of Dr. Main to be unpersuasive.  (Doc. No.

11-3, p. 23.)  The ALJ considered Dr. Main's statement in which he concluded Plaintiff could

stand, walk, and sit less than two hours in an eight-hour day and lift ten pounds.  (Doc. 11-24,

pp. 30-32.)  The ALJ found the restrictive findings in Dr. Main's medical source statement were

not supported by his treatment notes in which he found Plaintiff's chronic low back pain was

stable and that Plaintiff should continue taking his medications.  (Doc. No. 11-3, p. 23; Doc. No.

11-21, p. 9; Doc. No. 11-22, p. 7; Doc. No. 11-23, p. 81.)

In addition, the ALJ noted that the restrictive findings in Dr. Main's medical source

statement were not consistent with the reports of other examining physicians who found Plaintiff

had largely normal physical examination findings.  (Doc. No. 11-3, p. 23.)  For example, the ALJ

noted in an August 23, 2020 office visit, Davin Cordell, M.D. ("Dr. Cordell"), found Plaintiff

had a non-antalgic gait, normal posture, no edema, no muscle spasm in his lumbar spine, and

essentially normal muscle strength in his hips, knees, and ankles.  (Doc. No. 11-3, p. 23; Doc.

No. 11-23, p. 41.)  Dr. Cordell also found that an x-ray of Plaintiff's lumbar spine showed that

Plaintiff had mild disc degeneration at L3-L4 and L4-L5, with no evidence of fracture or

spondylolisthesis.  (Doc. No. 11-23, p. 41.)

The ALJ also noted that in July 2021, Michael McCarty, M.D. ("Dr. McCarty"), found

Plaintiff had a full range of motion in his back, no muscle spasm, negative straight leg raising

test, no motor deficits, and a normal gait.  (Doc. No. 11-3, p. 24; Doc. No. 11-24, p. 4.)  In

addition, Dr. McCarty noted a neurological examination showed Plaintiff had equal strength in

his lower extremities.  (Doc. No. 11-24, p. 8.)

Plaintiff characterizes Dr. Cordell's notes as revealing moderate to severe stenosis at L3-

4 and L4-5, with central disc herniation at L4-5.  (Doc. No. 17, p. 6.)  And notes that Dr. Cordell

offered pain management injections or surgery to Mr. Ortega, and although Mr. Ortega preferred

surgery, he chose injections, because of the cost of surgery.  *Id*.  Plaintiff characterizes Dr.

McCarty's findings as stating that Mr. Ortega has neuropathy, with diminished sensation in the

distal lower extremities.  (Doc. No. 17, p. 7 (citing Doc. No. 11-24, p. 9).)  Plaintiff argues that

this part of the medical record does not provide evidence which is materially inconsistent with

the opinions expressed by Dr. Main.  *Id*.

Plaintiff does not explain, however, how his characterization of Dr. Cordell and Dr.

McCarty's findings support a different conclusion than the ALJ's determination, after

considering their medical reports, that Plaintiff had largely normal physical examination

findings.  For example, even if it is true that Plaintiff has diminished sensation in his lower

extremities, this does not negate the ALJ's finding that Plaintiff's normal gait and equal strength

13/19

in his lower extremities supports "a largely normal physical examination" finding.  Further,

Plaintiff fails to consider that the ALJ is considering both supportability and consistency.  Here,

the ALJ found that because Dr. Cordell's examination findings were largely normal, that

Plaintiff's medication seemed to be stabilizing Plaintiff's back pain, and noting that Dr. McCarty

found that Plaintiff had a full range of motion in his back and equal strength in his lower

extremities, that Plaintiff was not limited to standing, walking, and sitting less than two hours in

an eight-hour day and lifting ten pounds.  In other words, the ALJ found, by considering

persuasive medical evidence, that Dr. Main's medical opinion was unpersuasive.

   In sum, the ALJ considered all medical opinions and prior administrative medical

findings, using the relevant factors.  Accordingly, the ALJ did not err in his evaluation of Dr.

Main's opinion.

   **c.**   ***The remaining persuasive medical record provided substantial evidence that supports the ALJ's RFC and disability determinations.***

   Plaintiff argues that, by rejecting the opinions of the state agency medical consultants as

to Plaintiff's residual functional capacity, and the opinion of the treating primary care physician,

Dr. Main, the ALJ must have derived Plaintiff's RFC by substituting his own medical judgment,

in violation of the regulations.  (Doc. No. 14, pp. 7–9.)  The Commissioner argues that

substantial evidence supported the ALJ's finding that Plaintiff is not disabled, because the ALJ

considered Plaintiff's record as a whole in determining his RFC.  (Doc. No. 16, p. 7.)

   The Court weighs four elements to determine whether there is substantial evidence of

disability: "(1) objective medical facts; (2) diagnoses and opinions of treating and examining

physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age,

education, and work history." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (citing *Wren*

*v. Sullivan*, 925 F.2d 123, 126 (1991)).  In evaluating a plaintiff's claims of disabling pain to

determine the resulting limitations on her ability to work, the ALJ must follow the requirements

set forth in 20 C.F.R. §§ 404.1529, 416.929.  According to this regulation, the ALJ must first

determine that the plaintiff has "a medical impairment(s) . . . [that] could reasonably be expected

to produce the pain or other symptoms alleged."  20 C.F.R. §§ 404.1529, 416.929.  Next, the

ALJ must evaluate the intensity and persistence of the plaintiff's symptoms, considering "all of

the available evidence from [the plaintiff's] medical sources and nonmedical sources about how

[the plaintiff's] symptoms affect [them]."  *Id.* §§ 404.1529(c), 416.929(c).  Other factors relevant

to the ALJ's determination of the plaintiff's symptoms include: (1) the plaintiff's daily activities;

(2) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms; (3)

the type, dosage, effectiveness, and side effects of any medication the plaintiff takes or has taken

to alleviate pain or other symptoms, among many other factors.  *Id.* §§ 404.1529(c)(3),

416.929(c)(3).  The ALJ is not required to incorporate limitations in the RFC that he or she does

not find to be supported in the record.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988)

(*per curiam*).  "It is within the ALJ's discretion to determine the disabling nature of a claimant's

pain, and the ALJ's determination is entitled to considerable deference."  *Chambliss v.*

*Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (*per curiam*) (citations omitted).

   The ALJ's responsibility is to "interpret" the medical evidence to determine capacity to

work.  *Lasher v. Berryhill*, No. A-17-CV-464 AWA, 2018 WL 4560215, at *3 (W.D. Tex. Sept.

21, 2018) (citing *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016)).  For a plaintiff to

show the ALJ erred in this determination, "the plaintiff must show that no reasonable person

could find support in the record for the RFC assessed by the ALJ, not only that some conflict

might appear to exist between a claimant's purported symptoms and the RFC." *Crista B. v. Berryhill*, No. 1:18-CV-00042-BP, 2019 WL 2996553, at \*4 (N.D. Tex. June 19, 2019), *adopted sub nom. Crista B. v. Saul*, 2019 WL 2996021 (N.D. Tex. July 9, 2019).  Even if the court determines the evidence "preponderates in [the claimant's] favor," the court must still affirm the Commissioner's findings "unless [it finds] that there is not substantial evidence to support the ALJ's findings."  *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985) (citing *Patton v. Schweiker,* 697 F.2d 590, 592 (5th Cir. 1983); *Olson v. Schweiker,* 663 F.2d 593, 595 (5th Cir. 1981)).

Social security cases supporting remand demonstrate instances in which the ALJ discounts *all* of the available medical evidence before making an unsupported opinion as to the limitations presented by the applicant's medical conditions and where this error prejudiced the plaintiff.  *See*, *e.g., Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009) (unpublished); *Gonzalez v. Kijakazi*, No. CV 1:21-40, 2022 WL 317679, at \*8 (S.D. Tex. Jan. 6, 2022) (Morgan, M.J.), *adopted*,  2022 WL 313907 (S.D. Tex. Feb. 2, 2022); *Ramos v. Saul*, No. CV 1:19-109, 2020 WL 5097160, at \*10 (S.D. Tex. July 29, 2020) (Morgan, M.J.), *adopted*,  2020 WL 5097066 (S.D. Tex. Aug. 28, 2020).

In contrast, here, after considering the persuasiveness of the opinions of the state agency consultants and Dr. Main, the ALJ reviewed the record as a whole, as he was required to do, rather than take Dr. Main's report as final.  (Doc. No. 11-3, pp. 2-24.)  The ALJ considered Dr. Cordell's opinion.  *Id*. at 23; Doc. No. 11-23, p. 41.  The ALJ also considered Dr. McCarty's opinion.  (Doc. No. 11-3, p. 24; Doc. No. 11-24, pp. 4, 8.)  In addition, regarding Plaintiff's mental impairments, the ALJ noted that overall Plaintiff's medications for his anxiety and

depression were effective, and that Plaintiff had a good response to them.  (Doc. No. 11-3, p. 24;

Doc. No. 11-22, p. 76; Doc. No. 11-23, p. 5; *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986)

(impairments controlled by medication are not disabling).)  In sum, the ALJ properly determined

Plaintiff's RFC based on the record as a whole.  *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir.

2012) (noting that the ALJ has the "sole responsibility" to assess the RFC under the regulations

and that what the claimant "characterizes as the ALJ substituting his opinion is actually the ALJ

properly interpreting the medical evidence to determine his capacity for work").

Plaintiff points out that neither Dr. Cordell nor Dr. McCarty offer an opinion as to

residual functional capacity.  (Doc. No. 17, p. 6.)  Yet, Plaintiff does not point to any authority,

and nothing in the rules suggests, that the ALJ must solely rely on that medical evidence which

gives an RFC opinion.  As explained above, for a plaintiff to show the ALJ erred in this

determination, "the plaintiff must show that no reasonable person could find support in the

record for the RFC assessed by the ALJ, not only that some conflict might appear to exist

between a claimant's purported symptoms and the RFC."  *Crista B.*, 2019 WL 2996553, at *4.

Even if the court determines the evidence "preponderates in [the claimant's] favor," the court

must still affirm the Commissioner's findings "unless [it finds] that there is not substantial

evidence to support the ALJ's findings."  *Carry*, 750 F.2d at 482.  Further, "[a]n ALJ's decision

is not subject to reversal, even if there is substantial evidence in the record that would have

supported the opposite conclusion, so long as substantial evidence supports the conclusion that

was reached by the ALJ."  *Scott v. Comm'r, Soc. Sec. Admin.*, No. 4:20-CV-01136-BJ, 2022 WL

4240888, at *2 (N.D. Tex. Sept. 14, 2022) (citing *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009

WL 1542466, at *5 (N.D. Tex. June 2, 2009)).

Here, Plaintiff has not shown that no reasonable person could find support in the record for the ALJ's RFC determination or that the evidence preponderates in his favor.  In addition, even if Plaintiff has demonstrated that Dr. Cordell and Dr. McCarty's medical reports support a different conclusion than the one reached by the ALJ, the Plaintiff has not shown that the ALJ did not at all support his conclusion with evidence from the record.  Therefore, Plaintiff has not met his burden to support a remand or reversal.

In sum, the ALJ appropriately relied on the findings of Dr. Cordell and Dr. McCarty, which provides more than a mere scintilla of evidence on which to rely.  *Taylor*, 706 F.3d at 603 ("What [the plaintiff] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work.").  In making the RFC decision, the ALJ decided to restrict Plaintiff to light work, with more restrictive limitations than found by the state agency medical consultants.  The ALJ based his RFC and disability decisions upon substantial evidence in a sufficiently developed record, and he did not err in declining to order further development of the record.  *See Scott*, 2022 WL 4240888, at *8 (where the ALJ properly weighed the opinions of the state agency medical consultants and one doctor against the other evidence and the record as a whole).  Therefore, substantial evidence supports the ALJ's RFC finding and the ALJ's disability determination.

### F. *Conclusion and recommendation.*

After review of the parties' briefing, the record, and relevant law, and for the reasons discussed above, the undersigned concludes that the Commissioner applied the proper legal standard in evaluating the medical opinions, determining Plaintiff's RFC, and finding Plaintiff not disabled, and the Commissioner's decision was supported by substantial evidence.  The

undersigned therefore recommends the decision of the Commissioner be affirmed and this case be dismissed.

### G.  Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **14 DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, and the United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **14 DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on March 14, 2023.

MITCHEL NEUROCK
United States Magistrate Judge